Council. Thank you, Your Honors. Holly Sullivan, Federal Defenders of San Diego, on behalf of Mr. Terriquez-Flores. Your Honors, if I could reserve five minutes for rebuttal, please. You may not need the full 20 minutes for this case. It's a possibility, Your Honor. Okay. Try probability. Your Honors, in this case, the government's failure to turn over Agent Terriquez's due process rights. A central issue, a central focus in this trial, was a credibility determination between the government's lead case agent, Agent Tracy, and Mr. Terriquez, the defendant in this case. The jury had to decide whose version of events they believed, who they found more credible. And if the government, Agent Tracy, the lead case agent, had written a supplemental report, that report corroborated a great deal of the information that Mr. Terriquez had told Agent Tracy at the time of the interrogation. Agent Tracy had then gone out and attempted to determine whether or not what Mr. Terriquez had told her was, in fact, true, if she could corroborate that information. And she was able to. Agent Tracy believed that Mr. Terriquez was lying about coming to the United States, trips to the United States, in order to visit relatives. And Agent Tracy went out and located some of those relatives. When was the report actually turned over, in the middle of the trial? The report was turned over in the middle of the trial. Did counsel ask for a continuance, an extra day, or to do anything with respect to the trial, to the report at all? The problem with the timing of the report, and the district court also noted this, is the subject of the report came up during the cross-examination of Agent Tracy. When I asked Agent Tracy which report she had written, and the response was that Agent Tracy, in addition to the report of investigation I had, also had written a supplemental report, which the government at that time termed was not of any significance, didn't relate to the testimony, didn't relate to the subject matter of the trial. For that reason, the district court stated the report should be turned over after the lunch break had gone. At that point, when the government had turned over the report, the government's case was finished. Mr. Triquez was being called to the stand. And at that point, that's when the report was turned over. I understand every bit of that, but what happened when it was turned over? The problem, Your Honor, is that when it was turned over, there wasn't a sufficient amount of time to be able to go through the report and digest the report. I could have said, we want a continuance of a day, we want more time in order to do that. That's the point. Did you ask for an hour, ten minutes, a day? This is a bombshell, motion for mistrial. I mean, it just seemed to go like nothing had happened. Well, the concern with it, Your Honor, and it's a fine... Now you're trying to tell us this is a great big deal, but at the time, it doesn't seem to have been anything. The concern with it, and the district court also had this concern, as Your Honors can see through the excerpt, it took the district court about three readings of the report, that amount of time in order to actually digest the contents of the report. And that's the At that point, defense counsel, and also the court, has to make the judgment call and the concern, do you cause problems with the jury in saying, look, we need a break, we need you to come back tomorrow, and inconvenience the jury, who will then, of course, hold it against the party that... So now you're telling us that rather than inconvenience the jury, you sold your client down the river? No, Your Honor, that's not the case. The concern is that without a sufficient amount of time, and that's the reason that there's a timely manner... You asked for time. Your Honor, we just got this report. We need the rest of the day to take a look at it. We need an hour. We need something. I mean, it was like you got the report and it was like, so... It wasn't a case that the report was turned over and it was so. There were numerous discussions. There was numerous discussions by the court, at least three or four in the acceptor record, that discussed the value of that report and the ability to have that report. The concern is that at the time the report is turned over, the government's case is already finished and the defendant has already made a decision on whether or not they'll testify. You can't unring the bell at a certain point. Counsel, the government had rested at the time the report was turned over? The government had one witness, I believe the value of the marijuana witness that was left when the report had been turned over after the trial had begun, after the lunch hour. The report was not turned over immediately upon request of the report being turned over. It wasn't turned over during the lunch hour. It was turned over before the government rested? I'm sorry? It was turned over before the government rested? Correct, Your Honor. During trial. And was there a request to keep the agent on the stand? You know, he needs, we're suspending his testimony, he needs to be present if I want to recall him to cross-examine him? The agent would have been available in order to recall. The agent was also under a defense counsel's subpoena. Also, the case agent is sitting throughout the entire trial. The concern with recalling the case agent at that point is the case agent is the only witness in that trial. The case agent is then able to sit and listen to Mr. Trikas' testimony and can change their testimony, can make alterations based upon what they hear, based upon the testimony of other witnesses. No other witness has that opportunity. Another witness, another agent that may be in the hallway is not going to be able to come in after being privy to that information. What's the point of that, though? So? The point is that if then you choose, at that point in time, after the report is turned over, to call Agent Tracy back to the stand and to question her about the contents of that report, not only is it taken out of context and loses some of its vigor in cross-examination, the mode of interrogation, the mode of questioning that the jury comes to expect, how the jury expects evidence to be presented. Additionally, at that time, she's already been able to hear the testimony of Mr. Trikas, and is then able to make different comments, to change her testimony based upon that. She's an adverse witness, and she's the case agent for the government, and she's able then to take the information that she has learned because of the fact that that information wasn't turned over in a timely fashion, and be able to take that information to alter the way in which she would answer the questions. Agent Tracy was called to the stand, and the government called her to the stand. She was the one who took the stand and said that she believed Mr. Trikas was lying about numerous factors. She believed Mr. Trikas was not going into the United States to visit relatives. She didn't believe he even had a cousin in Chula Vista. She didn't believe any of those factors. And she was allowed to be called to the stand to answer those questions, knowing that in her back pocket is a report that says, even if she didn't believe it, she corroborated that that information is true. Well, but wouldn't, that testimony was solicited to know her state of mind at a particular point in time. Was that particular point in time when she testified? Because I understand that this, the report had been prepared the prior day. That's correct. The particular, it's difficult to assess whether or not Agent Tracy was referring only to the exact moment that she was interrogating Mr. Trikas, or whether she was opining, whether she believed him at all. I do think it would make a difference with the lead case agent getting on the stand and saying, you know, I kept on questioning him for 45 minutes. I asked him questions repeatedly. I went through prior text crossings. I went through all this information with him because I didn't believe him. I told him he was lying. I went through all this information. And then lo and behold, the day before trial, Agent Tracy goes out and corroborates a great deal of that information. The reason why she didn't believe his denied knowledge story is called into question. She didn't believe that he didn't know about drugs because she didn't believe all of these other factors, which then she has the opportunity to go and corroborate these other factors. It may change her view. It may change the circumstances of that interrogation  I don't want to belabor this point, but I want to make sure I understand your argument. In effect, you're arguing if she's speaking about her current state of knowledge after her confirmation prior day, that she's not telling the truth. Is that what you're arguing? The argument is that it's impeachment. It's impeachment of Agent Tracy in her saying, I didn't believe this person. I didn't believe what he was saying. And then Agent Tracy later is able to corroborate a great deal of that information. So even if she didn't believe him at that time and continued to question him because she didn't believe him, she actually was able to make a factual determination subsequent to that interrogation that those facts were true, that there were other witnesses who corroborated those facts. And the importance is not just that those witnesses exist. The importance is that Agent Tracy herself knew that those witnesses existed. She knew of those facts at the time that she testified. She didn't believe him. Your Honor, in this case, the report is extremely important. And the reason that it is so important is that it does have a substantial effect on the government's key witness, on the credibility of the government's key witness. As the District Court repeatedly stated, this case was a credibility determination, a credibility battle between Mr. Tarikas and the lead case agent in this case. Your Honor, and I would note that the District Court repeatedly stated that the document, the supplemental report, was not turned over in a timely fashion. On page 341 of the excerpt, the Court stated, Ms. Jennings, you are telling me that had Ms. Sullivan had the report in a timely fashion, she might not have cross-examined Agent Tracy about the follow-up efforts that she made. If I had been Ms. Sullivan representing this fellow, I might have then said, do you believe him when he told you he was going to visit his relatives in Chula Vista? I mean, don't know whether. My question is, could Ms. Sullivan have asked Agent Tracy on cross-examination, did you believe him when he told you he was going to visit his cousin? I suspect she would have said no. I don't believe that either. But the point is, she couldn't even ask that question or devise that strategy without having the report. But doesn't the judge apparently at the same time also say, you can recall this, once the report is produced, you can recall this agent? That's at the point of the motion for a new trial. That's at the time of sentencing. The judge made that determination, and that you could have done that. You could have done that at this time. Which is true. It is true that the case agent could have been recalled, but there are the problems that I have discussed in recalling the case agent at that point. At that point, the trial has gone too far. The witness, the defendant, has already made a decision to testify. The case agent is then privy to that information. And additionally, at that point, the government is able to go over that information. Now, see, those are points best made at the trial. Correct, Your Honor. Correct. The mistrial. Correct. And there were concerns at the time of the trial. There was a motion for a new trial that was also lodged in this case and discussed those facts. You didn't make a motion for mistrial, am I right? That's correct, Your Honor. Additionally, Your Honor, the entire case was a credibility contest between the two. And the district court then further invaded the jury's decision making ability by inaccurately answering two of the jury's questions, which the answers to the questions thereby bolstered the credibility of the government. What about the enhancement for perjury? The obstruction enhancement? The district court in this case did not make the necessary findings for an obstruction enhancement. The findings for an obstruction enhancement need to be expressed findings. The required findings are that there's false testimony on a material matter with willful intent. Did you ask for such a finding? No, Your Honor. Why not? The district court makes the findings at that time as to what the district court believes was not truthful testimony. And the district court was not speaking of the statements regarding knowledge, as the district court was in Jimenez. Instead, the district court was discussing that he didn't believe information about prior crossings. You correctly made the argument that you did not believe he gave false testimony about a material issue. Correct. He said that, material issue. And then it seems to me that the district court says implicitly, yes, he did. I don't agree with Your Honor in that the district court made a determination that it was on a material issue. He made it up. He's referring, Your Honor, to the prior crossing information. What the district court said in this case is he said that the explanations about a dry run, which is the government's term, which the district court adopted, not Mr. Tarikas' term, the explanations about the dry run made no sense. The timing was such that it was apparent to me, listening to Mr. Tarikas, that that was just subterfuge, that the uncle's name was invoked to provide an explanation for why he was up in Santa Ana. The district court repeatedly kept on going back to that explanation, the explanation of prior crossings. And then he said that the explanations of prior crossings caused him to distrust the rest of the testimony. The district court did not make the requisite findings, which are necessary for an obstruction enhancement. I do agree that the district court did make findings regarding false testimony. It's not entirely clear whether the false testimony the district court is referring to is merely the prior crossings testimony or going beyond that testimony regarding knowledge. I think the district court's findings are much more closely looked at with Jimenez. It's very similar to the case in Jimenez. In Jimenez, the defendant denied knowing of the stand and testified that they didn't know anything about the drugs being within the vehicle. The district court there stated that Jimenez was very clear initially when she spoke to officers, and then she took the stand, and it really was quite the opposite. She denied it. I do believe that she knowingly lied on the stand. And in that case, this court reversed, finding that because the court here did not expressly find that the false testimony was material, its finding of perjury failed to encompass all the predicates of the defense. JUDGE GREENBAUM You wanted to say five minutes. You said you'd be done with 4 1⁄2. MS. HAUSMAN Yes, Your Honor. Thank you very much. JUDGE BREWER May it please the Court. Good morning, Your Honors. Paul Street on behalf of the United States. I think Judge Trott hits the Brady issue right on the head. You're correct, Your Honor. At trial, the fact that the report they didn't have the report at the beginning of trial wasn't a big deal. Counsel, to her credit, she looks at the district court's argument between my co-counsel and, you know, she grabs onto that. But that, at the time, the district court said a number of things with all due respect to Judge Burns, but didn't have the benefit of the report at the time that this discussion was going on. The trial started on February 7th with picking a jury in the afternoon, and the trial actually got started the next day on the 8th. And at lunchtime, I turned over the report to Ms. Sullivan, and they had the report, could have called Agent Tracy, could have done a number of things, and they chose not to. Quite frankly, why? Because all the information contained in the report, Ms. Sullivan already was aware of it. She knew it, and the report sets that out. All of the two witnesses, two key witnesses, one of which she called, which was the defendant's sister, Veronica, both told Agent Tracy, I've talked to the defense counsel. So clearly, she was aware of these witnesses, and frankly, she wanted to call the other cousin, Gabriel, she could have. She chose not to for tactical reasons. I think there's a lot of supposition and assumption as to why Agent Tracy prepared this report, and it's not in the record, and it honestly wasn't because she didn't believe it. It was because she was directed to do it by myself. I told her on the eve of trial, hey, go interview these people, see what they say. And I think there's just a lot of assumption on behalf of counsel why she did it. What about the obstruction, the enhancement for obstruction by perjury? Again, Your Honor, I think you're absolutely correct. I think that the factual predicates that Dunnegan require are there. The problem is, were you aware of the Jimenez case? Absolutely, Your Honor. And I think that the Jimenez case basically goes back and it repeats what Dunnegan wanted. And the Jimenez case, I think, with the Ninth Circuit, wanted to make sure of is that an individual that takes the stand, the defendant has an absolute constitutional right to take the stand and not to be punished for that. Were in this case, is there an express finding that the false testimony was material, an express finding? I don't think that, Judge Burns, Your Honor, never said the magic word material. I think he laid out the factual predicate in the record and it was... So isn't that an error? I don't believe it is, because I think the purpose of the Jimenez case was to ensure that courts didn't willy-nilly go around and just... Did it say there has to be an express finding of materiality? I think that it said that it needed to be encompassed following Dunnegan. I think that what the court was saying was... Because the court here did not expressly find that the false testimony was material, its finding of perjury failed to encompass all factual predicates of perjury as required by Dunnegan. I mean, we seem to have a bright line rule that a judge has to say, and I find this material. It didn't happen here. Well, Your Honor, with all due respect to the court... You should have told the court, the mean old nasty Ninth Circuit requires an express finding of materiality. Your Honor, and that would be my fault. The way I read it is, as long as the court makes the appropriate findings, they do not have to say that... But how do you know that if it says there has to be an express finding of materiality? It isn't the end of the world either way. I understand that, Your Honor. I understand that. And the reason, how I read that is, provided the Supreme Court gave the Ninth Circuit guidance and the guidance was that the factual predicates be there. Granted, Judge Burns did not say material, did not use the phrase materiality, but I think that the court's focus was to make sure that... Now, how do we write this? We say, Jimenez, even though it said express, we didn't mean it? No, no. I think that how I would write it, if I were you, Your Honor, is that the facts, the predicate facts were there. The court went through a very thoughtful analysis. We didn't mean you have to make an express finding when we said you have to make... An implied one is okay. Well, I think that it's consistent with Dunnegan. I think that the goal is to be consistent with the precedent that's appropriate. With Dunnegan, but it's not consistent with Jimenez. The reason why the court in Jimenez said that was because in that case, and I think every case turns on its facts, in that case, the judge clearly did not give deference to the individual's constitutional right to testify. Then, if he's found guilty, not be punished for that. Here, Judge Burns is following the spirit and the letter of Jimenez when he says, you can come into my court, you testify without penalty. But if I look at the evidence and I find out that you lied, then you'll be punished for that. What are you going to do next time you're in this situation? I'm going to make sure that he makes a finding that is material. Absolutely, Your Honor. But I think in this case, I think that the judge did the right thing and that what the court wanted to be done was done. You may be right on remand. You may be right. Very well, sir. And if there are no other questions, the government would submit. Thank you, counsel. Thank you, Your Honor. I would like to address one of the issues that the government counsel brought up, stating that at the time that the district court was making representations or findings regarding Brady error, that the district court had not yet read the report. And I do have to say that, again, the district court did take numerous opportunities in order to try and have the time mid-trial to read through the report and fully digest the report. On page 388, the district court finally, at this point, the case has already gone to the jury, says, I have to say that I have looked at the report. And I'm even now more firmly convinced now that it was discoverable, and then goes through a six-page, I believe, explanation as to why he believes that that report contained exculpatory and impeachment information. So I do think the district court at that point had digested the information and explained that he did believe that whether under Jenks, whether under Brady, that report was discoverable. Under Jenks, it should have been turned over immediately upon the time that witness testified. Under Brady, it should have been turned over in a timely fashion prior to trial. Your Honors, additionally... But the report wasn't prepared until the day before. Apparently, the night before trial, Your Honors, when the report was prepared. So what you're saying, it should have been turned over in the morning instead of at the noon recess. It could have been turned over day one of trial, when a jury was picked. It could have been turned over at that point, when able to make tactical decisions I guess I'm still off on the timing. I thought it was prepared the day before you got it. Is that wrong? It's... I believe that we picked a jury the day before that. So it's actually a day and a half, I guess, before the report had... from when the report had been prepared until when it was turned over. What's the date on the report, counsel? I think I'm going to help you out here. It's my recollection that the date on the report is the day before the trial begins. But I think what you're trying to tell us is the first day of trial was devoted to selection of the jury? That's correct, Your Honor. All right. So in effect, it's a full day before the first witness is called. Correct. It would have had at least overnight in order to look at that. Look at the report at that point. Your Honor, the district court's error in... the government's error in failing to turn over the supplemental Brady report was then compounded by the district court's responses to two jury questions. Twice the district court boasted the credibility of the government in answering the jury's questions. The first response indicated that the government in failing to turn over that report had done nothing wrong and that the government was not in any mistake for refusing to turn over that report or failing to turn over the report in a timely fashion. The district court then subsequently indicated that the reason the jury did not have two exhibits, Exhibits B and C, which were the secondary agent's report and the report investigation from the lead case agent, Agent Tracy, which were both used for impeachment purposes during trial, that the sole reason the jury did not have those reports is because defense counsel didn't give you those reports. What was the nature of the contemporaneous objection you made to the district court's comments? The nature of the objection, Your Honor, is that that objection is not in the record and is discussed within the briefs. At the original... I didn't understand that, counsel. The... I'm just trying to ask you, what objection did you make? The response, Your Honor, is that an objection was made at that time after the district court made that response and the jury had then returned to the deliberations rooms. As is noted in the... You objected to what the judge had said? Correct, Your Honor. And it's not in the record? Correct, Your Honor. And that's discussed within the opening brief. That at that point, it's not listed that there is a discussion in the record. There's also another discussion, explaining the discussion between counsel that also doesn't appear in the record. Counsel, myself, I've tried to amend the record in order to do that, but the court reporter doesn't have any record of it, and the only other way to further explain that is to have a stipulation between the parties and government counsel doesn't remember exactly what was said. You are able to... There's a practice point there. Don't do anything off the record. Well, you'd have to be told you're off the record, Your Honor, to know that you're not being recorded. There are other times that the record is clear. Discussions did, in fact, happen. The first agreement between counsel as to what the jury response would be was in the record. The actual response is at 333 to 346, and the discussion with counsel is at 327. After that, the discussions between counsel don't appear in the record. Your Honor can also see that there was a discussion and that on page 395 of the record, the district court, after then coming back and speaking with the jury, says, I have discussed this with counsel, and the short answer is no. The prior discussion doesn't appear in the record, so there are areas of the record that is missing. This was again highlighted in the motion for a new trial, which is at page 29 of the excerpt. The district court did not take issue with that.  It has never been disputed by the government nor in the government's briefs that that incident occurred or that that happened. The district court, in making those two responses to the jury questions, the first question on whether or not the jury was to consider or could hold it against the government that they failed to turn over that report, and the subsequent response, wondering whether or not they could have Exhibits B and C, compounded the original failure to turn over the Brady Report. In Old Chief, there's a discussion as to jurors' expectations of the presentation of evidence, and that's clear here. If the jurors' expectations are not satisfied, tears of fact may penalize the party who disappoints them by drawing a negative inference against that party, a party seemingly responsible for cloaking something that has reason for apprehension. And in this case, that's very clear. The jury was called upon to make a credibility determination between Agent Tracy and between Mr. Tarikas. And the district court, in answering the questions in the way that the district court chose to answer those questions, beyond the agreed-upon response by counsel, not only said, the government isn't hiding evidence from you, the government didn't do anything wrong, but if there's evidence that you are missing, if there's evidence reports that you want, the person that is hiding that evidence from you is defense counsel, which is an inaccurate view, an inaccurate and clearly not neutral explanation as to what happened at that time. Additionally, counsel and the defendant have a right to be present under Federal Rule of Criminal Procedure 43A at every stage of trial, including the appaneling of the jury and the return of the verdict. Because the district court did not explain what the district court's proposed answers would be, the district court merely would state, I'm going to tell the jury those reports are not in evidence. And then the district court went beyond that. The district court then violated Mr. Tarikas' rights by not giving the opportunity for counsel to be heard on those issues, on those matters. Additionally, Your Honors, in this case, the district court erred in denying a minor rule adjustment. The district court stated, as a matter of law, that the minor rule adjustment would not apply, and that was solely because of the reasons for trial. As the district court stated, as a matter of law, that that would not apply, then the district court is incorrect when looking at the case law that's before the court, such as Rojas, Millon, and Webster. Unless Your Honors have any other questions on that, I would conclude. Thank you. The case just argued will be submitted. The final case for argument this morning is Plasencia v. Alameda. Thank you.
judges: Reinhardt, Trott, Robart